**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PATRICK HOOD** | § | |
| | § | **CASE NUMBER:** |
| **Plaintiff,** | § | |
| **vs.** | § | |
| | § | |
| **MICHAEL PULLARA, AND JOEL** | § | |
| **GORSKI** | § | |
| | § | **JURY REQUESTED** |
| **Defendants.** | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

PATRICK C. HOOD, Plaintiff, complains of MICHAEL PULLARA, JOEL

GORSKI , and HARRIS COUNTY Defendants, and respectfully would show as follows:

### I.  JURISDICTION

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

because it presents a federal question arising under the Constitution and statutes of the

United States.  With respect to Plaintiff's claims based on 42 U.S.C. §§ 1985, the Court

has jusisdiction pursuant to 28 U.S.C. § 1343 (a) (1) and (a) (2).  The Court has pendant

jurisdiction over Plaintiff's claims arising under the laws of the State of Texas.

### II.  VENUE

2.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1332

because all or part of the events, acts, and/or omissions giving rise to Plaintiff's claims

occurred in this district.

### III.  PARTIES AND SERVICE

3.      Plaintiff, Patrick Hood, is an individual residing in Fort Bend, County

Texas.

4.      Defendant, Michael Pullara, is an individual residing in Houston, Harris County, Texas and may be served with citation at his place of business, 6507 Morningside Drive, Houston, Texas.

5.      Defendant, JOEL GORSKY, is an individual residing in Houston, Harris County, Texas and may be served with citation at his place of employment Financial Crimes unit, 8th floor 1200 Travis Street, Houston, Texas 77002.

6.      Defendant Harris County may be served with citation by serving the Houston city attorney,  Arturo G. Michel  at 900 Bagby St. Houston, Texas 77002.

## IV.      BACKGROUND FACTS

6.      Plaintiff was approached with a business transaction by an individual named Robert Zaba ("Zaba") regarding assisting Mr. Zaba with retrieving his funds that were being held in an overseas bank.  Zaba requested that Plaintiff, Pat Hood, lend him capital in order to get his money released from the overseas bank.  Zaba needed the advance of funds in order to pay fees and taxes on the money in the bank before the bank could release the funds.  In addition to Mr. Hood, Zaba also had another lender/investor involved in helping him free the money he had in a foreign country., the Holy Order of the Martist Brothers of Mexico City ("Martist Brothers").

7.      Hood worked with Zaba and his representatives for several months attempting to get the money released.  These efforts included Mr. Hood traveling overseas for an extended period of time as well as loaning money to Zaba.  The transaction was repeatedly delayed and did not proceed as expected and Mr. Hood, along with Zaba's attorney, Bruce Paige, flew to Mexico City to meet with representatives of the Martist Brothers at their facilities in Mexicao City.  This was done at the request and

expense of the Martist Brothers.  Mr. Zaba was also at the meeting and explained what had happened to delay the transaction.  As a result of the meeting, the Martist Brothers agreed to loan Zaba an additional amount of money to complete the transaction.  After the meeting in Mexico City, Mr. Hood ceased to have any involvement in the transaction.

8.      Approximately, two months later, Mr. Hood was again contacted by Zaba about the transaction.  Zaba represented to Mr. Hood that he needed an additional amount of money in order to get his funds released from the overseas bank.  Mr. Hood informed Zaba that he would not loan him any more money due to the amount he previously expended in attempting to facilitate the transaction. and the fact that the transaction was continually delayed due to mistakes on the part of Zaba or people working for him. Nevertheless, Zaba persuaded Mr. Hood to make a call to inquire whether an associate of Mr. Hood would be interested in participating in the transaction.  Mr. Hood did have associates who were interested in the transaction but only if safeguards were put in place to make certain that everyone was protected.  Mr. Hood was in favor of setting up the transaction so everyone was protected.  In order to determine whether the transaction could be structured in such a manner, Mr. Hood wanted to seek legal counsel.  Mr. Hood eventually was referred to Defendant Michael Pullara ("Pullara"), an attorney specializing in international law.

9.      Mr. Hood contacted Pullara and set up a meeting with him regarding the transaction.  Mr. Hood explained the details of the transaction and that Zaba was offering to pay an investor $500,000 for advancing capital of approximately $82,000.  In addition, Mr. Hood asked Pullara whether the transaction could be structured with a letter of credit so that no funds would change hands until the conditions of the transaction were met and

it was certain that the deal would be completed as anticipated.  Pullara asked numerous additional questions about the transaction which Mr. Hood could not answer.  Therefore, Mr. Hood gave Zaba's phone number to Pullara so he could call him directly and get the answers to his questions.  Pullara made this call in front of Mr. Hood at the initial meeting.

10.     Pullara told Mr. Hood that he could provide legal help with the transaction.  Later, Pullara told Mr. Hood that he had another client named Chittiac, from Lebanon that would be interested in the transaction.  According to Pullara, Mr. Chittiac was from Lebanon and was well connected in that country.  In addition, Mr. Chittiac would be interested in working with Zaba on procuring favorable oil contracts and oil concessions in other countries.  Mr. Hood was still to be compensated out of the proposed $500,000 even if the deal was completed with Mr. Chittiac as the investor rather than Mr. Hood or his people.  In addition, Zaba agreed to provide a letter of credit and to conduct the transaction with letters of credit.

11.     However, unknown to Mr. Hood, Defendant Pullara at some point after the initial meeting had contacted law enforcement officials claiming that the transaction was a scam.  Pullara made this contact even though he knew that Mr. Hood had come to him for legal advice and was attempting to structure the transaction in such a way that no one put up any money prior to the transaction being completed and the availability of the funds in the overseas bank being verified.  Defendant Gorsky was assigned to the case and he and Pullara concocted a scheme to wrongfully entrap Mr. Hood and others by setting up a false transaction in which they could claim that the transaction with Zaba was a scam.

12.     In order to achieve their goal of entrapping Mr. Hood, Defendants Gorsky and Pullara came up with the idea for Pullara to have a fictional client, Mr. Chittiac, who would be interested in the deal and who would promise future transactions regarding oil concessions.  In addition, Defendant Pullara would steer Mr. Hood away from using a letter of credit and would insist that his "client", Mr. Chittiac deal in cash.  This was necessary for Defendant Gorsky to set up the trap with elements of a crime he could get approval of with the District Attorney.  None of this was known to Mr. Hood and, Defendants Gorsky and Pullara went to great lengths to fraudulently conceal their true actions.  During the entire time of the transaction, Mr. Hood believed that Defendant Pullara was working for him as well as his other client, Mr. Chittiac, to consummate the transaction with Zaba.  Mr. Hood repeatedly asked Defendant Pullara about Mr. Chittiac and whether he was really interested in the transaction.   Defendant Pullara, at the direction of Defendant Gorsky, repeatedly told lies to Mr. Hood about Chittiac to conceal the elaborate scheme that Pullara and Gorsky had set up to entrap Mr. Hood, Zaba and others.

13.     The transaction originally was to be completed in Costa Rica at the insistence of Zaba and his attorney, Bruce Paige.  Mr. Hood traveled to Costa Rica with others to meet Zaba and his representatives.  Mr. Hood, at that time, did have individuals ready to invest in the transaction as long as letters of credit were utilized and no cash money had to be put up front.  Mr. Hood along with others waited in Costa Rica five days for the letters of credit to arrive so that the transaction could take place.  However, the letters of credit to be provided by Zaba did not arrive.  Mr. Hood then called defendant Pullara to tell him they had not received the letters of credit from Zaba.  Pullara told Hood to quit worrying

about the letters of credit because Pullara's other "client", Chittiac could do the transaction and Chittiac did not need a letter of credit to complete the transaction. Therefore, it was unnecessary for Mr. Hood to complete the transaction with his people who were requiring a letter of credit.  Mr. Hood continued to insist that the corresponding letters of credit be used as this was the only way that he knew of to protect any party that would become an investor.  Ultimately, Defendant Pullara convinced Mr. Hood that his client Chittiac was ready to complete the transaction with Zaba.  Defendant Pullara represented that his other client would not be able to meet with the parties in Costa Rica as he had business in Houston and then Japan.  Therefore, the transaction would have to take place in Houston.  A meeting was set up between the parties at Defendant Pullara's house.

14.     At the meeting between the parties, a police officer from Pasadena posed as Mr. Chittiac, Defendant Pullara's other client in the transaction.  Posing as Chittiac, the police officer showed up at the meeting with a satchel full of money.  No one at the meeting had requested that anyone bring cash to the meeting to complete the transaction.  However, the meeting was just a part of the scheme of Defendant Gorsky and Pullara to create a scenario to attempt to entrap the other parties into committing an alleged crime.  Shortly into the meeting, it was raided by the police and Mr. Hood, and Mr. Zaba, were placed under arrest.  Mr. Paige was later arrested when it was learned he intended to return to his home in Canada.

15.     The arrest was wrongful and Mr. Hood was maliciously prosecuted by the District Attorney's office of the City of Houston.  The criminal case was continued against Mr. Hood based on the lies and deceit of Defendants Pullara and Gorsky, who continued to

misrepresent what happened in the transaction.  The district attorneys office continued to prosecute Hood even though the prosecutor knew or should have known that the allegations against Mr. Hood were manufactured primarily by Defendants Pullara and Gorsky.  Subsequently, the charges were dropped, but not until it became apparent that Mr. Hood committed no crimes and that the transaction had been manipulated by Pullara and Gorsky to make it appear that crimes had been committed.  Mr. Hood did not have any idea of the deceit by Pullara and Gorsky until well after Mr. Paige went to trial and was acquitted.  Both Pullara and Gorsky concealed their wrongdoing in this matter.

### III.     CLAIMS  FOR RELIEF

### COUNT ONE --NEGLIGENCE

16.     Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in Paragraphs 1-15 of this Complaint.

17.     Defendant Pullara was negligent in his conduct with respect to Plaintiff Hood.  In this regard, an attorney-client relationship existed between Pullara and Hood as Hood sought legal advice from Pullara.  Pullara breached this duty and failed to meet the standard of care of a reasonably prudent attorney by using and disclosing information obtained from Hood to Defendant Gorsky and actively working against the interests of his client, Hood all the while claiming to be working in Hood's interests.  Pullara breached his duty of care to Hood, by committing one or more of the following:

> (a)  giving erroneous legal advice;

> (b)  failing to give legal advice when it became apparent he should have;

> (c)  disobeying a client's lawful instructions;

> (d)  taking action when not instructed to do so;

(e)  failing to properly handle a matter entrusted to him by the client;

(f)  failing to protect the interests of his client;

(g)  rendering advice to a client that the attorney knew to be false.

The foregoing breaches of duty were a proximate cause of damages sustained by Plaintiff Patrick Hood.

18.     Defendant Gorsky had the duty to conduct himself in his capacity as a law enforcement officer as would a reasonable and prudent law enforcement officer in the same or similar circumstances.  Defendant Gorsky breached this duty by failing to conduct an investigation into the matter and embarking on a course of conduct that was unlawful entrapment of the Plaintiff.  Defendant Gorsky knew or should have known that his conduct was not in compliance with the standards of a proper police investigation. Plaintiff suffered injuries and damages as a proximate cause of Defendant Gorsky's negligence.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

19.     Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in Paragraphs 1-15 of this Complaint.

20.     Defendant Pullara owed Plaintiff a fiduciary duty by virtue of the special relationship between them created when Plaintiff sought legal advice from Defendant Pullara.  Defendant Pullara breached this duty by actively working against the interests of Plaintiff Hood and actively misleading Plaintiff when Defendant knew that Plaintiff was relying upon the expertise of Defendant.

21.     Defendant Gorsky induced and aided Defendant Pullara in breaching the fiduciary duty that Pullara owed to Plaintiff and is jointly responsible with Defendant Pullara for the breach of fiduciary duty.

22.     Plaintiff has suffered damages proximately caused by Defendants breach of fiduciary duty.

## COUNT THREE – MALICIOUS PROSECUTION

23.     Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in Paragraphs 1-15 of this Complaint.

24.     The conduct of the defendants in this case constitute malicious prosecution. Defendants conduct initiated and caused a criminal prosecution against Plaintiff Patrick Hood.  The criminal prosecution was terminated in favor of Plaintiff and Plaintiff was innocent of all charges.   Defendants did not have probable cause to initiate the prosecution.  Defendants acted with malice in initiating the prosecution of Patrick Hood and Mr. Hood sustained damages that were proximately caused by the actions of the Defendants.

## COUNT FOUR – VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

25.     Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in Paragraphs 1-15 of this Complaint.

26.     Defendants conspired to manipulate the transaction at the basis of this suit and to create a misleading and false set of facts in order to set up the wrongful arrest and detention of Plaintiff and to subject Plaintiff to a wrongful prosecution.  Defendant's actions, orders, approvals and omissions were conducted under the authority of the City of Houston and its police department.  The Defendants actions have violated Plaintiff's

civil rights and are actionable under 42 U.S.C. §1985 et. seq.  In particular, Defendants actions are actionable under 42 U.S.C. §1985 (3).  Defendants also failed to prevent the violations of Plaintiff's civil rights even though they had the power to prevent the commission of acts violating Plaintiff's rights.  Defendants failure to act is actionable under 42 U.S.C. § 1986.  Plaintiff was injured and suffered damages as a direct and proximate result of Defendants actions and the violation of his civil rights.

## FIFTH COUNT – CONSPIRACY

27.	Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in Paragraphs 1-15 of this Complaint.

28.	Defendants conspired with each and the other to commit the foregoing acts against the Plaintiff with the intent to injure the Plaintiff.  Both Defendants committed overt acts in furtherance of the conspiracy and with the agreement of each to commit the acts.

29.	Plaintiff was injured and suffered damages as a proximate cause of Defendants actions.

## COUNT SIX – MISCELLANEOUS

30.	Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in Paragraphs 1-15 of this Complaint.

31.	Plaintiff would show that any statute of limitations have been tolled by the doctrine of fraudulent concealment and/or the discovery rule.  Defendants actively concealed their actions during the transactionS and afterwards during the criminal proceedings.

## IV.	DAMAGES

30.     As a direct and proximate result of the actions and occurrences made the basis of this suit, described above, Plaintiff Patrick Hood has suffered injuries and actual damages which include, but are not limited to the following:

    a.    Financial losses resulting from the loss of the benefit of the transaction at the basis of this suit;

    b.    Damages to Plaintiff's reputation;

    c.    Mental anguish;

    d.    Attorneys fees and expenses expended in defending the wrongful prosecution of criminal charges;

    e.    Compensatory damages for violations of Plaintiff's civil rights;

    f.    Attorneys fees as allowed by law;

    g.    pre-judgment and post-judgment interest as allowed by law;

    h.    exemplary and punitive damages as allowed by law.

## V.     PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff requests that the Court enter a judgment for compensatory damages, exemplary damages, attorneys fees and costs and for such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Dated November 2, 2007

Respectfully submitted,
Vincent/Moye

By: /s/ Scott Wolfrom
R. SCOTT WOLFROM

Texas State Bar No. 21871040
7660 Woodway, Suite 590
Houston, Texas 77063
Telephone:  713-780-7776
Facsimile:  713-266-8528

Attorney for Plaintiff Patrick C. Hood